STATE OF IOWA et al., Appellants, v. E. F. BARTLETT et al., Appellees.

DECEMBER 14, 1928.

*John Fletcher*, Attorney-general, *Maxwell A. O'Brien*, Assistant Attorney-general, and *Guy L. Carmichael*, County Attorney, for appellants.

*Lovrien & Lovrien* and *A. J. Burt*, for appellees.

ALBERT, J.—The Union State Bank of West Bend, Iowa, was a banking corporation under the laws of the state of Iowa. On

the 2d day of January, 1925, after having been designated as a depository for county funds by the board of supervisors of Palo Alto County, it executed its depository bond in the penal sum of $125,000, which bond was duly approved, according to law, by the county treasurer and board of supervisors of that county, and thereupon the county treasurer deposited with said bank the sum of $125,000. The defendants in this case were sureties on such bond.

At the time the bank closed, on February 27, 1926, the county still had on deposit the sum of $32,533.04, and, upon proper proceedings, the county received from the sinking fund of the state the amount last above designated. On June 14, 1927, a petition was filed in this action, designating the state of Iowa, R. E. Johnson, treasurer of the state of Iowa, Palo Alto County, and, J. J. Martin, treasurer of Palo Alto County, as plaintiffs. By reason of the statutes hereinafter referred to, it is quite apparent that Palo Alto County and J. J. Martin, treasurer of that county, are not proper parties herein, because they have no interest whatever in collections made under the terms of this bond.

The "Sinking Fund Act" was passed by the legislature as Chapter 173, Acts of the Forty-first General Assembly, and became a law on March 27, 1925. Generally speaking, this act was intended to furnish immediate relief where public funds had been deposited in a bank which failed, to the end that these subdivisions of the state might properly function, and that they be relieved from the impossible position in which they might be placed by the failure of banks. It provided a fund in the hands of the treasurer of state from which, on a proper showing, the subdivisions of the state could be paid the amount of public funds on deposit in the defunct bank, and thus be relieved from their financial distress. The fifth section of said act provided:

"Where public funds are secured by bond and the same are paid or advanced by the treasurer of state as herein provided, said treasurer shall be subrogated to all of the rights of the holder of such bond and is hereby authorized to enforce and collect the same and shall deposit the same in said sinking fund."

While it is true that the bond sued on here was executed

and delivered prior to the passage of this act, the sole purpose and tenor of the act show that the legislature intended to cover the very condition we have in this case. As is well known, there were many bank failures in this state, and the funds of many of the subdivisions of the state were tied up in such failures; and to relieve such situation, this act was passed; and the treasurer of state was subrogated to the right of the subdivision of the state holding such bond, and was authorized to collect the same.

At this point, it may be well to stop and consider just what the situation in the case was. The county had deposited money in this bank, and it failed. The county recouped from the sinking fund, and the treasurer of state thereby became subrogated to the rights of the county to enforce the terms of this bond. This right on the bond had then accrued, and the treasurer could then have been successful in maintaining an action to recover from the sureties on this bond. This act, however, was amended by Chapter 92, Acts of the Forty-second General Assembly, by adding thereto the following:

"However, no suit shall be maintained upon any such bond if the money was legally deposited by authority of the governing council or board, and no premium has been paid for the bond." Section 15.

This act became effective April 16, 1927, and, as above noted, the action in the instant case was commenced about the middle of June, 1927. It is apparent, therefore, that the last-above-quoted statute went into operation before the commencement of this action.

The treasurer of state, designated in this act as the "arm or agent" of the state to collect and distribute the sinking fund, is surely a part of the state government itself, he being simply the designated official to collect and handle this fund. He has no rights or duties except those conferred upon him by the state, and none which the state cannot waive or withdraw. The question before us for consideration is, What is the effect of the above-quoted section of said Chapter 92 of the Acts of the Forty-second General Assembly?

The section is self-explanatory, and does not need interpretation. It withdraws from the agent of the state (its treasurer) the right to sue on depository bonds of this character when no

premium has been paid for the bonds. In other words, it is well known that two kinds of bonds were used as depository bonds by banks for the deposit of public funds: one on which the sureties were paid,—in short, the bond was bought and paid for; the other, where the sureties were merely accommodating friends, who received no compensation for their suretyship. This section of the statute takes away from the treasurer the power to bring actions on bonds where the sureties are not paid sureties.

We are furnished a very excellent brief on the question of accrual of actions, vested rights, and retroactive statutes; but much of this involves questions that we do not care to discuss. There is no question that the right of action in this case accrued at the time the money was paid from the sinking fund to the county treasurer, and, as said, when that was done, the state had a right to sue and recover on this bond. Whereupon, the state, by its legislature, enacted the aforesaid Chapter 92 of the Acts of the Forty-second General Assembly, thereby directing that no action should be brought on said bonds except on those secured by paid sureties. We know of no law which would prevent the state from forgiving unpaid sureties or from waiving its right to recover from such sureties, and our attention is called to none. It was a right that the state had against the signers of this bond, and having such right, we are unable to see why it could not forego the enforcement of such right if it so chose.

Our attention is called, however, to the case of *State for Use of San Saba County v. Williams*, 10 Tex. Civ. App. 346 (30 S. W. 477), an action to recover on a liquor dealer's bond; but, while much is said in the opinion that apparently supports the contention of the appellants in this case, yet the court decided the case on other grounds. It was claimed in that case that the bond was given and breached under the Act of 1887, which it was claimed was repealed by an act of the year of 1893. At the close of the case, the court said:

"The Act of 1893 did not repeal that part of the Act of 1887 under which the bond sued on was made."

The case having turned on the fact that the act was not repealed under the act under which the bond was given, what is said in that case is, therefore, dictum on the question we have before us. More than this, the question in that case, if it is to be

considered authority here at all, was a question of the effect of a repealing act; whereas, in the case before us, we have a specific act by the legislature, prohibiting the very thing which the plaintiffs seek to do.

.We are disposed to, and do, hold that the demurrer filed herein was properly sustained by the district court.—*Affirmed.*

STEVENS, C. J., and DE GRAFF, MORLING, and WAGNER, JJ., concur.